UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RONALD T. CLARKE | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 1:17-cv-417 |
| | § | |
| UNITED STATES OF AMERICA | § | |
| | § | |
| Defendant | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Ronald T. Clarke is a 54-year-old veteran of the U. S. military, honorably discharged, by and through his counsel of record, who alleges as follows:

### I.
### PARTIES, JURISDICTION, SERVICE OF PROCESS AND VENUE

1.1   This is a medical malpractice case.

1.2   Plaintiff Ronald T. Clarke is a ten-year service veteran residing in Bexar County, Texas within the jurisdiction of this Court.

1.3   The Defendant is the United States of America.

1.4   This Federal District Court has jurisdiction of this cause, because this action is brought pursuant to and in compliance with 28 U.S.C. §§1346(b), 2671-2680 et seq., commonly known as the "Federal Tort Claims Act," which vests exclusive subject matter jurisdiction of Federal Tort Claims litigation in the Federal District Court.

1.5   The United States of America may be served with process in accordance with Rule 4(I) of the Federal Rules of Civil Procedure by serving a copy of the Summons and of the Complaint on Richard L. Durbin, Jr., United States Attorney for the Western District of Texas, by

1

certified mail, return receipt requested at his office, United States Attorney, Western District of Texas, 601 N.W. Loop 410, Suite 600, San Antonio, Texas 78216 to the attention of the Civil Process Clerk, and by serving a copy of the Summons and Plaintiff's Original Complaint on Jeff Sessions, Attorney General of the United States, by certified mail, return receipt requested, at the Attorney General's Office, 10th and Constitution Avenue, N.W., Washington, D.C. 20530, to the attention of the Civil Process Clerk.

 1.6 Venue is proper in this district pursuant to 28 U.S.C. § 1391 (e)(1)(B), as the United States is a Defendant and the negligence and damages giving rise to the claim occurred in this district.

## II.
## LIABILITY OF THE UNITED STATES OF AMERICA

 2.1 This case is commenced and prosecuted against the United States of America pursuant to and in compliance with Title 28 U.S.C. §§ 2671-80, commonly referred to as the "Federal Tort Claims Act" (FTCA). Liability of the United States is predicated specifically on Title 28 U.S.C. §§ 1346(b)(1) and 2674 because the personal injuries and resulting damages of which complaint is made, were proximately caused by the negligence, wrongful acts and/or omissions of employees of the United States of America at the Audie L. Murphy VA Medical Center in San Antonio, Texas, while acting within the scope of their office or employment, under circumstances where the United States of America, if a private person, would be liable to the Plaintiff in the same manner and to the same extent as a private individual under the laws of the State of Texas. The Audie L. Murphy VA Medical Center in San Antonio, its employees and/or agents are covered by the FTCA and subject to liability as claimed herein.

## III.
## JURISDICTIONAL PREREQUISITES

3.1     Plaintiff pleads pursuant to Title 28 U.S.C. §§ 2672 and 2675(a), that the claims set forth herein were presented administratively to the Defendant's agency, the Department of Veterans Affairs by Plaintiff through his attorneys on March 11, 2016.  The claims were denied on November 18, 2016.  Accordingly, Plaintiff has complied with all jurisdictional prerequisites and conditions precedent to commencement and prosecution of this litigation.  Since 3/11/2016, the Plaintiff's medical circumstances have continued for longer than his medical condition on 3/11/2016 and are adverse almost causing his death.  These additional adverse medical conditions were due to the Defendant's errors and omissions on 2/18/2015 and not discoverable on March 11, 2016 at the time notice was filed.

## IV.
## THE AUDIE L. MURPHY VA MEDICAL CENTER/SOUTH TEXAS HEALTH CARE SYSTEM, VA

4.1     Audie L. Murphy VA Medical Center/South Texas Health Care System, VA is an agency of the United States of America.  The United States of America, Defendant herein, through its agency, Audie L. Murphy VA Medical Center/South Texas Health Care System, VA (hereinafter "Audie Murphy" or "VA"), at all material times hereto, owned, operated and/or controlled the health care facilities known as the Audie L. Murphy VA Hospital, and through its agencies at said VA Hospital staffed the facility with its agents, servants, and/or employees.  The Audie L. Murphy VA Hospital is a federally funded hospital covered by the FTCA.

## V.
## EMPLOYMENT AND COURSE AND SCOPE

5.1     At all times material hereto, all persons involved in the medical and health care services provided to Plaintiff at the Audie L. Murphy VA Hospital, were agents, servants, and/or employees of the United States of America, or some other agency thereof, and were at all times material hereto, acting within the course and scope of such employment.

3

## VI.
## FACTS

6.1     This claim concerns the substandard medical hospital care provided by agents, servants, and employees at the Audie L. Murphy VA Hospital including, but not limited to, the failure to abort an exploratory hiatus and gastric bypass when confronted by an extremely hostile abdomen of severe adhesions; failure of the surgeons to have sufficient experience with such an operation; failure to obtain appropriate consent by giving full explanation of the procedure to be performed; and failure to adequately care for the patient by performing a second operation with too many GI violations increasing the risk of sepsis to the Plaintiff.

6.2     On February 18, 2015, Ronald T. Clarke, a 51-year-old security manager, had, upon the recommendation of Dr. Savu, a Rouxen Y-Gastric Bypass, an operation of a hernia, and a diagnostic laparoscopy performed at Audie L. Murphy VA in San Antonio.  At the time of the surgery, the Department of Labor statistical indices showed Plaintiff had a work-life expectancy of 14.5 years and a life expectancy of at least 30.7 years.

6.3     Plaintiff's medical history showed he had chronic severe reflux.  Plaintiff's principal medical history showed a Nissen procedure had previously been performed on the Plaintiff while he was on U. S. Air Force active duty in 1991 and that he also had a history of gastroesophageal reflux (GERD).  Vomiting was noted on a weekly basis in his medical records.

6.4     On February 10, 2014, the Plaintiff was diagnosed with a large hiatal hernia with a slipped Nissen, the procedure performed in 1991.  In any process where a prior Nissen operation "slips" or fails, a thorough diagnostic work up is essential before any repair surgery should be performed.

6.5     On March 14, 2014, the Plaintiff was seen at Audie L. Murphy VA Hospital where a February 20, 2014 endoscopy result was reviewed indicating the hiatal hernia and a gastric study was ordered as well as a surgical consult was had.

6.6     On August 13, 204, another surgical consult was had but only a liver, gall bladder, and bile duct study (HIDA) was ordered.

6.7     On September 25, 2014, another surgery consult was had for his "slipped" Nissen from 1991 and his vomiting one to two times a week due to GERD.

6.8     On November 18, 2014, the VA had another surgical consult where it was reported the VA had still not located the records from the 1991 Nissen surgery to determine if the procedure was for reflux or vomiting and/or ulcers.  No esophagitis was noted.  The manometry study used to measure function of the lower esophagus was unable to be completed due to vomiting.  The gastric emptying study was normal.

6.9     The surgical consult was signed by Plaintiff on February 18, 2015 for the February 18, 2015 operation, but no disclosure of the lifestyle changes mandated by the anticipated operation was seen in the records.  Dr. Savu recommended the surgery despite a 2 ½ foot midline scar indicating prior adhesions.  Dr. Savu stated "the most we will have to do is a gastric bypass" and never mentioned a gastrectomy nor explained a gastrectomy's impact.

6.10    On February 18, 2015, Dr. Michelle Savu took Plaintiff to surgery after recommending it due to severe, chronic reflux for several years, GERD, and vomiting 2 – 3 times a week.  The surgery to be performed was exploration of a hiatal hernia, open Roux en Y gastric bypass, a partial gastrectomy, diagnostic laparoscopy and an intraoperative endoscopy (EGD).  Dr. Savu, the physician employed by the Audie L. Murphy VA hospital, noted upon cutting into the abdomen that it was "extremely hostile" meaning adhesions were severe and heavy.  Severe and

heavy adhesions create numerous probabilities of tears and abdominal perforations leading to complications and, in some cases, death. Instead of terminating the procedure, the doctor continued with the operation even after discovering the transverse colon was densely adherent to the anterior abdominal wall and that the stomach was also adherent. The decision was made to convert the operation to a gastric bypass, because the surgeon noted difficulties getting around the esophagus. The operation was completed and a leak test was performed which was negative.

      6.11    Shortly after the February 18, 2015 surgery, the Plaintiff became tachycardic (rapid heart rate with low urine output indicating a leak). A CT scan and examination confirmed a leak, and he was found to be septic.

      6.12    On February 21, 2015, follow-up surgery, due to Plaintiff's grave condition, was performed finding a necrotic gastric pouch of peritoneal fluid in the abdominal surgery. A repair for the leaks, removal of the "copious amounts of foul-smelling…" necrotic fluid, and a stomach reduction was performed necessitating the placement of a feeding tube. Four tubes were placed through the gastrointestinal tract increasing the danger of more sepsis.

      6.13    On March 22, 2015, the Plaintiff first awoke from the initial February 18, 2015 operation to find all feeding would be done by tube, his esophagus was closed before the stomach, and he was bed bound at the hospital. No eating, drinking, or swallowing was allowed from February 18, 2015 through September 2016.

      6.14    From February 18, 2015 to June 29, 2015, Plaintiff underwent 11 surgeries caused by the operation of February 18, 2015. These surgeries included skin grafts, creation of a right radio cephalic fistula, a tracheotomy, an abdominal washout, an exploratory laparotomy and closure of an enferotomy, a revision of a gastric and jejunal tube with biologic mesh implantation, a second feeding tube revision, washout with mesh replacement to proximate the fascia, another

washout with proximal remnant/gastojejunostomy resection, another washout and debridement of necrotic omentum, a gastric parch resection and segmented small bowel resection, and a 3rd feeding tube placement by interventional radiology.

     6.15    On June 29, 2015 to February 15, 2016, the Plaintiff was admitted to a rehab facility for complex wound management, and required several visits to the ED for abdominal pain and a syncopal episode, whereby he was diagnosed with aberrant conduction. He also developed acute kidney injury requiring short-term dialysis and subsequently developed chronic kidney disease. Renal testing showed kidney damage from oxygen deprivation due to being coded (life functions ceased) twice in February 18, 2015 and February 21, 2015. His weight fell from over 250 lbs. in February 2015 to 107 lbs. in February 2016.

     6.16    On August 12, 2016, the Plaintiff underwent an exploratory laparotomy, lysis of adhesions, an appendectomy, cholecystectomy, truncal vagotomy, pyloroplasty, end-end esophagogastostomy, bilateral separation components and bilevel mesh placement abdominal wall closure. The indication for this surgery was an enterocutaneous fistula, occluded distal esophagus secondary to leak from failed RnY gastric bypass, a large abdominal wall hernia, history of intra-abdominal sepsis from leak, chronic abdominal pain, and severe protein calorie malnutrition.

     6.17    On August 15, 2016, the Plaintiff was taken back to surgery for skin closure and VAC removal. Interventional radiology placed a drain on August 19, 2016 for a fluid collection; the drain was upsized on August 26, 2016. Taken back to surgery on August 29, 2016 for an exploratory laparotomy and abdominal washout, wound vac placement, placement of a Malencott drain into a colonic fistula. Stool was found leaking from colonic perforation into abdomen. The VAC was discontinued and Mr. Clarke was started on wet-to-dry dressing changes. Eventually a split thickness skin graft and VAC placement was performed on October 14, 2016. Afterwards,

while undergoing endoscopy, he developed an irregular heart rhythm called SVT, requiring adenosine and ICU transfer. On October 28, 2016, he was found to be jaundiced and had increasing liver function enzymes. CT revealed a pseudoaneurysm, requiring IR stent placement due to a "Code Iliac" (caused, in part, by the initial surgeries of February 18 and February 21, 2015). He remained stable and was transferred to the floor from the ICU on November 8, 2016.

6.18   From February 18, 2015 until September 2016, Plaintiff was fed by a tube caused by the initial operation on February 18, 2015. Despite knowledge of the prior scar and adhesions in Plaintiff, Dr. Savu recommended a surgery which upon being faced with a "hostile abdomen" could have been closed on that day, without the resultant years of medical incapacity the Plaintiff has been forced to endure. Failing to abort the surgery on February 18, 2015 after learning of the extremely difficult nature of the surgery due to the large number of adhesions in the abdomen and, with that knowledge, proceeding with that surgery was a violation of the standard of care for a reasonably prudent surgeon, like Dr. Savu, who had little or no experience in this type of operation.

6.19   Dr. Savu's recommendation for the surgery did not include adequate warning to the Plaintiff of the major lifestyle changes he would incur and prevented the Plaintiff from giving informed consent for the procedure.

6.20   The post February 28, 2015 surgery was June 21, 2015 also placed too many tubes through the gastrointestinal tract in the Plaintiff, aggravating his septic condition and was also a violation of the standard of care.

6.21   On April 22, 2017, the Plaintiff is still with an ileostomy bag caused by the prior violations of the standard of care by the Defendant's surgical staff and is limited in his bending, stooping, and lifting so that he is permanently disabled.

6.22 On April 22, 2017, the Plaintiff on information and belief has incurred paid medical bills exceeding $500,000.00 and is still under convalescent instructions while living at his residence with permanent restrictions on bending, stooping, lifting, walking, and the enjoyment of life.

## VII.
## CAUSE OF ACTION AGAINST THE UNITED STATES OF AMERICA

7.1 Defendant, the United States of America, was negligent in their care and treatment of Plaintiff Ronald T. Clarke in the following ways, including but not limited to:

(a) Failing to adequately inform Plaintiff of the lifestyle changes the recommended surgery would cause preventing him from giving informed consent;

(b) Failing to timely and properly complete all tests necessary prior to the February 18, 2015 surgery;

(c) Failing to take into account the massive prior scarring and adhesions Plaintiff had despite a 2.5 foot mid-line scar showing the prior surgery from 1991;

(d) Failing to discuss and provide Plaintiff with a second opinion before the February 18, 2015 surgery;

(e) Failing to offer greater non-surgery weight reduction therapies before a risky surgery;

(f) Failing to counsel Plaintiff about the risks of proceeding with the February 18, 2015 surgery;

(g) Failing to obtain Plaintiff's fully informed consent to proceed with the February 18, 2015 surgery;

(h) Failing to complete the manometry test prior to the February 18, 2015 surgery;

(i) Failing to limit the number of tubes placed within the gastrointestinal tract in the second (February 21, 2015) surgery which increased Plaintiff's risk of infection;

(j) Failing to close the surgery on February 18, 2015 after discovery of Plaintiff's "hostile" abdomen thus preventing the history following February 18, 2015;

(k) Failing to disclose Dr. Savu's lack of experience when confronting extensive adhesions as Plaintiff had; and

(l) Failing to obtain a second opinion of a more experienced surgeon following the February 18, 2015 surgery and creating a more dangerous situation for Plaintiff with surgeons who had inadequate experience for the attempted failed surgeries on February 18, 2015 and February 21, 2015.

7.2 At all times mentioned herein, the employees, agents, and/or representatives of the United States Government were negligent and proximately caused all of the injuries and damages sustained by Plaintiff.

## VIII.
## DAMAGES

8.1 As a direct and proximate result of Defendant's negligent acts and/or omissions, Plaintiff Ronald T. Clarke has suffered, and continues to suffer, severe injuries, including but not limited to:

(a) Past and future physical pain, suffering, and mental anguish;

(b) Past and future medical, health care and attendant care expenses;

(c) Loss of earnings and earning capacity;

(d) Past and future physical impairment;

(e) Past and future mental impairment;

    (f)       Past and future physical disfigurement;

    (g)      Loss of enjoyment of life; and

    (h)      Other pecuniary damages.

Such injuries are, in reasonable probability, permanent in nature. The Plaintiff brings this suit to recover all damages cognizable under the law resulting from the injuries to him as a result of the occurrence in question.

## IX.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Plaintiff requests that the Defendant be cited in terms of law to appear and answer herein; that upon final trial and hearing hereof, the Plaintiff have judgment against the Defendant in the amount of five million dollars ($5,000,000.00) in damages, and for such other and different amounts as they shall show by proper amendment before trial; for post-judgment interest at the applicable legal rate; for all Court costs incurred in this litigation; and for such other and further relief, at law and in equity, both general and special, to which the Plaintiff may show himself entitled and to which the Court believes him deserving.

Dated this 5th day of May, 2017.

Respectfully submitted,

**MALLIOS AND ASSOCIATES, P.C.**

3736 Bee Cave Road, # 1-182
Austin, Texas 78746
512.499.8000 (telephone)
512.499.8760 (facsimile)
jim@malliospi.com

  /s/ George J. Mallios
George J. Mallios
State Bar No. 12867450

*and*

Isabel de La Riva
DE LA RIVA & ASSOCIATES
Afton Oaks II
400 N. Loop 1604 E
San Antonio, Texas 78232
210.224.2200 (telephone)
210.224.2204 (facsimile)
idelariva@delarivalaw.com
State Bar No. 24012517

***ATTORNEYS FOR PLAINTIFF***